IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| ROBERT VEAL, | ) | |
| Plaintiff, | ) | No. |
| v. | ) | |
| | ) | |
| TASSO J. KACHIROUBAS, | ) | |
| JOHN MEDUGA, | ) | |
| WILLIE DAVIS, | ) | |
| JAMES KIZART, | ) | |
| JESSE GARCIA, | ) | |
| Illinois State Police Officers | ) | |
| RICHARD PACKERT, | ) | |
| Special Agent of | ) | |
| Illinois State Police, | ) | |
| MICHAEL R. MORGAN, | ) | |
| Former Dixmoor Dep. | ) | |
| Chief of Police | ) | |
| JOSEPH FALICA, JR., | ) | |
| Former Dixmoor Lt. | ) | |
| NICHOLAS GRAVES, | ) | |
| Former Dixmoor Chief of Police | ) | |
| VILLAGE OF DIXMOOR, | ) | |
| AS-YET UNKNOWN CURRENT | ) | |
| or FORMER EMPLOYEES of | ) | |
| THE ILLINOIS STATE POLICE, and | ) | |
| AS-YET UNKNOWN CURRENT | ) | |
| or FORMER EMPLOYEES of | ) | |
| THE VILLAGE of DIXMOOR, ILLINOIS, | ) | |
| | ) | |
| Defendants. | ) | |

## **COMPLAINT**

Plaintiff, Robert Veal alleges as follows:

## **Introduction**

1.     Robert Veal spent 10 years in prison for a crime he did not commit.

2.     Mr. Veal and his co-defendants, Jonathan Barr, James Harden, Shainne Sharp, and Robert Taylor were wrongfully convicted for allegedly raping and murdering a 14-year-old girl, Cateresa Matthews.

3.      Mr. Veal was 14 years old at the time of Ms. Matthews's murder.

4.      Mr. Veal was 15 years old at the time that he was coerced into falsely confessing to Ms. Matthews' rape and murder.  At the time that one or more of the defendants in this case interrogated Mr. Veal, they knew or should have known that Mr. Veal had severe developmental disabilities and that those disabilities were so severe that Mr. Veal been removed from his public school.

5.      Mr. Veal was 18 years old (by one day) on the date he pled guilty to Ms. Matthews's rape and murder.  Mr. Veal's guilty plea was solely based on the false and coerced confessions of Mr. Veal and his co-defendants.

6.      Mr. Veal and his co-defendants had nothing to do with these horrible crimes. Ms. Matthews was actually raped and murdered by 33-year-old convicted sex-offender Willie Randolph ("Randolph").

7.      When the police defendants found themselves almost a year after the crime and still without an arrest, they created a false case against Mr. Veal and his co-defendants. Focusing first on Mr. Veal, Defendant Officers coerced and fabricated confessions from Mr. Veal and two of his co-defendants that implicated Mr. Veal and his co-defendants.  Defendant Officers compounded the initial misconduct by suppressing exculpatory evidence, including the coercion and fabrications that resulted in these false statements.

8.      Not only was there no "hard" evidence—fingerprints, serology, DNA, or other physical evidence of any kind—linking Mr. Veal or his co-defendants to Ms. Matthews' rape and murder, in fact the DNA evidence recovered *excluded* Mr. Veal and his co-defendants. Nevertheless, the force of Defendants' misconduct was enough to secure a conviction despite the objective evidence indicating innocence.

9.     Years later, Mr. Veal and his co-defendants were exonerated when DNA established that Randolph was the real perpetrator.

10.     Through this action, Mr. Veal seeks compensation for losing ten years of his life to Defendants' misconduct, including the most formative years of his life, ages 15 to 25.

## Jurisdiction and Venue

11.     Mr. Veal brings this action pursuant to 42 U.S.C. § 1983 to redress the deprivation under color of law of Mr. Veal's rights under the United States Constitution.

12.     This Court has jurisdiction over Mr. Veal's federal claims pursuant to 28 U.S.C. § 1331 and Mr. Veal's state law claims pursuant to 28 U.S.C. § 1367.

13.     Venue is proper under 28 U.S.C. § 1391(b).  Defendant Village of Dixmoor is a municipal corporation located within this federal judicial district.  Additionally, the events giving rise to the claims asserted herein occurred within this district.

## The Parties

14.     Plaintiff Robert Veal is 35 years old and currently resides in St. Paul, Minnesota. Mr. Veal lived in Harvey, Illinois with his mother and grandmother at the time he was taken into custody and subsequently incarcerated.

15.     At all relevant times, Defendants Tasso J. Kachiroubas, John Meduga, Willie Davis, James Kizart, Jesse Garcia, and Special Agent Richard Packert were officers with the Illinois State Police employed by the State of Illinois and acting within the scope of their employment.

16.     At all relevant times, Defendants Joseph Falica, Jr., Michael R. Morgan, and Nicholas Graves were employed by the Village of Dixmoor with the Dixmoor Police Department and acting within the scope of their employment.

17.     Defendants Kachiroubas, Meduga, Davis, Kizart, Garcia, Packert, Falica, Morgan, the as-yet Unknown Current or Former Employees of the Illinois State Police, and the as-yet Unknown Current or Former Employees of the Village of Dixmoor, Illinois, are referred to collectively as the "Defendant Officers."

18.     The Defendant Village of Dixmoor is a municipal corporation under the laws of the State of Illinois.

## The Matthews Murder

19.     On November 19, 1991, 14 year-old Cateresa Matthews disappeared on her way home from her grandmother's house.

20.     The evening that Ms. Matthews disappeared, her mother contacted the Harvey and Dixmoor police departments to report that her daughter was missing.

21.     Several days later, on November 22, 1991, Randolph called 911 to report that he had seen a body in a field near Frank's Pizza on Western Avenue in Dixmoor, a few blocks from Ms. Matthews' grandmother's house. There is no indication in the file that Defendant Officers investigated this call at the time.

22.     On December 8, 1991, 19 days after she disappeared and 16 days after Randolph called 911, Ms. Matthews' body was discovered by a passerby in the grassy field near highway I-57, not far from her grandmother's and Frank's Pizza.  She was naked from the waist down and had been shot in the mouth.

23.     The Illinois State Police and the Dixmoor Police jointly investigated Ms. Matthews' murder.  In keeping with standard police practices, Defendants withheld many details about the murder from the public so that they could use these details to test the veracity of any eventual confession.  These details included the precise position of Ms. Matthews' body, the

4

clothing she was wearing (and what clothing had been taken off her body), and the specific location of her injuries.

24.     In the immediate aftermath of the murder, Defendant Officers interviewed friends, relatives, and classmates of Ms. Matthews.   Defendant Officers learned no information that implicated Mr. Veal or his eventual co-defendants.

## The True Killer and Rapist is not Pursued

25.     Defendant Officers made no reported progress in the Matthews investigation in the ten months after Ms. Matthews' murder.

26.     Defendant Officers ignored and/or suppressed the fact that Randolph, a known violent sex offender, lived about a mile away from where Ms. Matthews was found.   Randolph had served time for rape, deviate sexual assault, and armed robbery.   Only months before Ms. Matthews' disappearance, Randolph was paroled to 1809 W. 142nd Street in Dixmoor, less than a mile from where Ms. Matthews was abducted.

27.     Randolph, who was nearly 20 years older than Ms. Matthews, had previously used the exact same field where Ms. Matthews was raped and murdered to rape another young teen.   He also had a history of other violent assaults on young women.

28.     On March 8, 1992, at a time when no arrests had been made in Ms. Matthews' murder and rape, the Dixmoor Police Department arrested Randolph for possession of crack cocaine after he was found wandering through the street disrupting traffic about a block from his home.   On information and belief, the arresting officers ran his criminal history, revealing his past convictions as a violent sex offender and that Randolph was released from prison and placed on parole shortly before Ms. Matthews disappeared.

29.     Just under three months later, on May 29, 1992, the Calumet Police arrested Randolph after finding Randolph shouting in the street and waiving and firing a revolver. Randolph was subsequently convicted of unlawful use of a weapon and sentenced to four years in prison.

30.     Defendant Officers failed to compare the DNA uncovered from Ms. Matthews to Randolph, notwithstanding Randolph's prior conviction for sexual assault, the proximity in which he lived to where Ms. Mathews' body was found, his repeated erratic behavior since being paroled, and the fact that he was in possession of a revolver. There is no indication in any file that Mr. Veal or his co-defendants have that Defendant Officers ever conducted a ballistic test between the gun possessed by Mr. Randolph and the gun used to shoot and kill Ms. Mathews.

31.     Randolph went on to commit a number of other violent crimes in the Chicago area.

### The False Case Against Mr. Veal

32.     Defendant Falica, and an as-yet unknown Officers of the Illinois State Police or the Village of Dixmoor questioned Shainne Sharp multiple times about Ms. Matthews' death in the months prior to Mr. Veal's arrest. Mr. Sharp denied knowing anything about the crime and did not implicate Mr. Veal or his co-defendants. Defendant Officers did not memorialize these interviews of Mr. Sharp in any police reports in the file available to Mr. Veal and his co-defendants. Further, Defendant Officers intentionally omitted Mr. Sharp's exculpatory statements from their police reports.

33.     At some point in the course of their investigation, Defendant Officers took 15 year-old Keno Barnes out of school and brought him to the police station to interview him about Ms. Matthews. Mr. Barnes told Defendant Officers that he did not know anything about

Ms. Matthews' murder. Nevertheless, Defendant Officers fabricated a statement from Mr. Barnes wherein he falsely asserted that Jonathan Barr told Mr. Barnes that Mr. Barr saw Ms. Matthews get in a car with Robert Veal, Robert Taylor, and some other boys, and that this was the last time Mr. Barr ever saw Ms. Matthews again.

34.     On or about October 29, 1992, Defendant Kachiroubas and another Defendant Illinois State Police Officer, who upon information and belief was Defendant Davis, picked Mr. Veal up from his home and took him to the Markham courthouse for an interrogation. Defendants told him that they wanted to question him about a murder that happened in Dixmoor.

35.     At the time of Mr. Veal's interrogation, Mr. Veal was a mentally challenged and learning-disabled 15 year-old with an IQ of 56, who:

     a.  Had difficulties with reading, writing, and comprehension that required him to be removed from public school and attend special education classes;

     b.  Suffered from an anxiety disorder; and

     c.  Had deafness in his right ear.

36.     Mr. Veal's intellectual- and age-based limitations did not deter Defendant Kachiroubas and, upon information and belief, Defendant Davis, from questioning Mr. Veal. The interrogation was conduced without a lawyer, parent, guardian, or any other representative present during this unrecorded interrogation.

37.     At some point after Defendants Kachiroubas and Davis began interrogating Mr. Veal, Defendant Garcia entered the interrogation room.

38.     Over the course of several hours, Defendant Kachiroubas and Defendant Davis interrogated Mr. Veal about the rape and murder of Ms. Matthews. Defendant Kachiroubas fed

Mr. Veal fabricated statements and facts regarding Mr. Veal's and his co-defendants' involvement in Ms. Matthews' rape and murder.

39.     Mr. Veal maintained his innocence throughout his interrogation. Despite Mr. Veal's protestations, Defendant Kachiroubas and Defendant Davis persisted in telling Mr. Veal what he and the other four boys supposedly did. Defendants Kachiroubas and Davis told Mr. Veal to go along with the story they provided him.

40.     As a result of Defendants Kachiroubas' and Davis' improper and undue coercion, inflicted on a mentally challenged 15 year-old, Mr. Veal falsely implicated himself, Mr. Harden, Mr. Taylor, Mr. Barr, and Mr. Sharp in the rape and murder of Ms. Matthews.

41.     Defendant Kachiroubas, with Defendant Davis in the room, drafted a handwritten statement that Mr. Veal ultimately signed, even though he did not understand what he was signing. Mr. Veal thought that by signing the statement, he would be allowed to go home. (Instead, the Defendant Officers arrested and charged Mr. Veal with Ms. Matthews' rape and murder.)

42.     Mr. Veal would not have falsely implicated himself and the others but for the Defendants' misconduct.

43.     Defendants Kachiroubas and Davis suppressed that Defendant Kachiroubas and Davis coerced Mr. Veal and fed Mr. Veal a fabricated story.

44.     Additionally, Defendants, Kachiroubas and Davis reported that the nonpublic details in Mr. Veal's statements had originated with Mr. Veal to support their false case against Mr. Veal and the other co-defendants.

45.     Later on October 29, 1992, the Defendant Officers interrogated 15-year-old Robert Taylor. Defendant Officers physically abused, yelled at, threatened, and coerced

Mr. Taylor into falsely implicating himself, Mr. Veal, Mr. Harden, Mr. Barr, and Mr. Sharp in the rape/murder of Ms. Mathews.

46.     As a result of this improper and undue pressure, Mr. Taylor falsely implicated himself, Mr. Veal and the others co-defendants in the crime. Mr. Taylor would not have falsely implicated Mr. Veal but for Defendants' misconduct.

47.     To further build the false case against Mr. Veal and his co-defendants, Defendant Officers threatened and coerced then 17-year old Mr. Sharp and into giving a false statement on or about October 30, 1992. Mr. Sharp's false statement implicated himself and co-defendants Veal, Harden, Taylor, and Barr in Ms. Matthews' rape and murder.

48.     Shainne Sharp would not have falsely implicated Mr. Veal but for Defendant Officers' misconduct.

49.     Defendant Officers failed to disclose that Mr. Veal's and his co-defendants' statements were coerced. Mr. Veal had no means available to him to independently discover how Defendant Officers obtained the false statements of the other two purported witnesses.

## Mr. Veal's Wrongful Conviction

50.     The Cook County State's Attorney's Office subsequently offered Mr. Veal a twenty-year sentence to plead guilty and testify against his co-defendants. On June 22, 1995, Mr. Veal pled guilty and was sentenced to 20 years in the Illinois Department of Corrections based on Mr. Veal's and some of his co-defendants' false and coerced confessions.

51.     Mr. Veal did testify against his co-defendants. Mr. Veal has unequivocally recanted his confession and testimony, stated that his coerced confession and testimony were false, and stated that neither he nor any of his co-defendants raped or murdered Ms. Matthews.

**Mr. Veal's Exoneration**

52.     In August 2009, Mr. Harden filed a motion for post-conviction DNA testing, which was later joined by Mr. Taylor and Mr. Barr.

53.     Cellmark Laboratories in Dallas, Texas conducted the DNA testing, which excluded Mr. Veal and his co-defendants as the perpetrators of the charged crimes.  Despite the false and coerced confessions claiming that all five co-defendants had intercourse with the victim, the testing revealed only a single male DNA profile.

54.     On July 6, 2010, Mr. Veal recanted his confession and trial testimony in their entirety, stating that they were false and coerced, and that Mr. Veal only agreed to plead guilty and testify to save him from what his attorney told him was certain to be an 80-year prison sentence.

55.     In March 2011, the Combined DNA Index System (CODIS) database matched the DNA profile removed from Ms. Mathews to Randolph.

56.     On November 3, 2011, the Cook County State's Attorney's Office requested the Cook County Circuit Court to vacate the conviction s of Jonathan Barr, James Harden, and Robert Taylor, who at that time were still incarcerated.  The Cook County State's Attorney's Office also moved to dismiss the charges that were still pending against Taylor, Harden, and Barr at the time their convictions were vacated.   The trial court vacated all three of these convictions and dismissed the cases against Taylor, Harden, and Barr.

57.     On December 12, 2011, the Cook County State's Attorney's Office did not oppose Mr. Veal's petitions to vacate his guilty plea and conviction, and the State's Attorney also made her own oral motion to dismiss the charges still pending against him.  The Cook County Circuit Court vacated Mr. Veal's guilty plea and his conviction and dismissed his case.

58.     On January 14, 2012, the Cook County State's Attorney's Office did not oppose Mr. Sharp's petitions to vacate his guilty plea and conviction, and the State's Attorney also made her own oral motion to dismiss the charges still pending against him.  The Cook County Circuit Court vacated Mr. Sharp's guilty plea and his conviction and dismissed his case.

## Mr. Veal's Damages

59.     Mr. Veal was taken from his family and placed in custody when he was just fifteen years-old, and was incarcerated until he was 25, for a crime he did not commit.  He must now attempt to make a life for himself outside of prison without the benefit of nearly a decade of life experiences, including his adolescence and much of his young adulthood, which normally equip adults for that task.  Mr. Veal must also face life with the same mental disabilities that he faced prior to being taken into custody but with the additional trauma and stigma that comes with being convicted and incarcerated for a rape and murder that he did not commit.

60.     Defendants' misconduct proximately caused Mr. Veal to be incarcerated continuously for the relevant time period.

61.     Defendants stripped Mr. Veal of the ability to spend time with his family and his friends, to share holidays, births, funerals, and other life events with loved ones, and of his fundamental and constitutionally-protected freedom by causing Mr. Veal's unlawful incarceration.

62.     As a result of the foregoing, Mr. Veal has suffered tremendous damage, including personal physical injury and mental suffering, all proximately caused by Defendants' misconduct.

## Count I – 42 U.S.C. § 1983
### Violation of Due Process

63.     Mr. Veal incorporates each preceding paragraph of this Complaint as if fully restated here.

64.     Defendant Officers, acting individually, jointly, and/or in conspiracy, as well as under color of law and within the scope of their employment, deprived Mr. Veal of his constitutional right to due process.

65.     Defendant Officers, acting individually, jointly, and/or in concert and in conspiracy, fabricated false reports and other evidence which caused the conviction of Mr. Veal.

66.     Defendant Officers deliberately withheld exculpatory evidence.     Absent Defendant Officers' misconduct, Mr. Veal would not have been convicted.

67.     Defendant Officers proximately caused Mr. Veal's unjust criminal conviction. Defendant Officer thus deprived Mr. Veal of his constitutional right to not have his liberty taken away without due process, in violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

68.     Defendant Officers proximately caused Mr. Veal to suffer injuries, including but not limited to physical injury, loss of liberty and emotional distress.

69.     Defendant Officers' conduct was objectively unreasonable.     Defendant Officers acted intentionally and with willful indifference to Mr. Veal's constitutional rights.

70.     The misconduct described in this Count was undertaken pursuant to the policy and practice of the Village of Dixmoor in that the constitutional violations committed against Mr. Veal were committed with the knowledge or approval of person(s) with final policymaking authority for the Village of Dixmoor, and/or undertaken by a municipal agent with final policymaking authority for the Village of Dixmoor.

## Count II – 42 U.S.C. § 1983
## Failure to Intervene

71.     Mr. Veal incorporates each preceding paragraph of this Complaint as if fully restated here.

72.     Defendant Officers stood by without intervening to prevent the violation of Mr. Veal's constitutional rights, even though they had the opportunity to do so.

73.     Mr. Veal suffered injury, including but not limited to physical injury and emotional distress, as a result of the Defendant Officers' failure to intervene to prevent the violation of Mr. Veal's constitutional rights.  Defendants had a reasonable opportunity to prevent this harm, but failed to do so.

74.     Defendant Officers' conduct was objectively unreasonable.  Defendant Officers acted intentionally and with willful indifference to Mr. Veal's constitutional rights.

75.     The misconduct described in this Count was undertaken pursuant to the policy and practice of the Village of Dixmoor in that the constitutional violations committed against Mr. Veal were committed with the knowledge or approval of person(s) with final policymaking authority for the Village of Dixmoor, and/or undertaken by a municipal agent with final policymaking authority for the Village of Dixmoor.

## Count III – 42 U.S.C. § 1983
## Conspiracy To Deprive Mr. Veal of His Constitutional Rights

76.     Mr. Veal incorporates each preceding paragraph of this Complaint as if fully restated here.

77.     After the murder of Ms. Matthews, the Defendant Officers reached an agreement amongst themselves to frame Mr. Veal for the crime and deprive Mr. Veal of his constitutional rights.

78. Defendant Officers further conspired to deprive Mr. Veal of exculpatory information to which he was lawfully entitled and which would have led to Mr. Veal not being charged, Mr. Veal not pleading guilty, or Mr. Veal's more timely exoneration.

79. Defendant Officers, in concert with other unknown co-conspirators, conspired by concerted action to accomplish an unlawful purpose by unlawful means.

80. In furtherance of the conspiracy, each of the co-conspirators committed overt acts and was an otherwise willful participant in joint activity.

81. Defendant Officers willfully conspired with malice and/or reckless indifference to Mr. Veal's rights.

82. Mr. Veal's rights were violated, and he suffered physical harm, financial damages, and severe emotional distress and anguish as a direct and proximate result of Defendant Officers' illicit prior agreement referenced above

## Count IV – 42 U.S.C. 1983
### Liability of Supervisors

83. Mr. Veal incorporates each preceding paragraph of this Complaint as if fully restated here.

84. Supervisory defendants, including but not limited to Defendants Michael Morgan and Nicholas Graves, caused Mr. Veal's unfair trial, wrongful conviction, and continued wrongful detention by their deliberate indifference and recklessness, including, when they failed to adequately train and supervise Defendants Falica and the as-yet Unknown Current or Former Employees of the Village of Dixmoor, Illinois.

85. Specifically, the supervisory defendants, including but not limited to Defendants Michael Morgan and Nicholas Graves, were either personally involved in the case against Mr.

Veal or knew or, in the absence of their deliberate indifference and recklessness, should have known of their subordinates' unconstitutional actions and related misconduct in the case.

86.     Furthermore, the supervisory defendants, including but not limited to Defendants Michael Morgan and Nicholas Graves, failed to train or supervise the Defendants Falica and the as-yet Unknown Current or Former Employees of the Village of Dixmoor, Illinois in constitutionally adequate law enforcement practices, particularly those which concerned interviews of suspects and witnesses and production of exculpatory evidence.  The supervisory defendants, including but not limited to Defendants Michael Morgan and Nicholas Graves, thereby encouraged and/or permitted the individual defendants to coerce and fabricate false inculpatory evidence and to withhold exculpatory and impeachment evidence, which caused the constitutional deprivations suffered by Mr. Veal.

87.     These interview techniques, failures in producing exculpatory evidence, fabrications, and other investigative procedures were contrary to accepted methods used by law enforcement agencies.  The supervisory defendants, including but not limited to Defendants Michael Morgan and Nicholas Graves, failed to train and supervise their subordinates to ensure that they employed proper investigation procedures.  The supervisory defendants, including but not limited to Defendants Michael Morgan and Nicholas Graves, thus demonstrated deliberate indifference and reckless disregard for Mr. Veal's constitutional rights.

88.     The supervisory defendants', including but not limited to Defendants Michael Morgan's and Nicholas Graves', proximately and directly caused Mr. Veal's constitutional deprivations and personal physical injuries, including the above-mentioned injuries and damages, by failing to train and supervise the individual defendants and employees as described above.

89.     The conduct of the supervisory defendants, including but not limited to the conduct of Defendants Michael Morgan and Nicholas Graves, was objectively unreasonable, and was undertaken intentionally, with malice, willfulness, and deliberate indifference to Mr. Veal's clearly established constitutional rights.

### Count V – State Law Claim
### Malicious Prosecution

90.     Mr. Veal incorporates each preceding paragraph of this Complaint as if fully restated here.

91.     Defendant Officers accused Mr. Veal of criminal activity knowing those accusations to be without genuine probable cause.  Defendant Officers made statements to prosecutors with the intent of exerting influence and to institute and continue judicial proceedings against Mr. Veal.

92.     Defendant Officers caused Plaintiff to be improperly subjected to judicial proceedings for which there was no probable cause. These judicial proceedings were instituted and continued maliciously, resulting in injury.

93.     Defendant Officers made false statements regarding Mr. Veal's alleged culpability with knowledge that their statements were false and perjured.  Defendant Officers also fabricated evidence by coercing false testimony from purported eyewitnesses and Mr. Veal's co-defendants.  Defendant Officers withheld the facts of their manipulation and the resulting fabrications from Mr. Veal.

94.     Defendant Officers acted with malice, willfulness, and reckless indifference to Mr. Veal's rights.

95.     Mr. Veal sustained and continues to sustain injuries, including but not limited to physical injury, pain and suffering because of Defendant Officers' conduct.

## Count VI – State Law Claim
### Intentional Infliction Of Emotional Distress

96.     Mr. Veal incorporates each preceding paragraph of this Complaint as if fully restated here.

97.     Defendant Officers' conduct described above was extreme and outrageous. Defendant Officers' actions were rooted in an abuse of power or authority. Defendant Officers intended to cause, or recklessly disregarded the probability that their conduct would cause, severe emotional distress to Mr. Veal.

98.     Mr. Veal suffered and continues to suffer emotional distress as a direct and proximate result of Defendant Officers' actions.

## Count VII – State Law Claim
### Civil Conspiracy

99.     Mr. Veal incorporates each preceding paragraph of this Complaint as if fully restated fully here.

100.     Defendant Officers, acting in concert with other known and unknown co-conspirators, conspired by concerted action to accomplish an unlawful purpose by unlawful means.

101.     Defendant Officers committed overt acts and were otherwise willful participants in joint activity in furtherance of the conspiracy.

102.     Defendant Officers acted with malice, willfulness, and reckless indifference to the rights of others.

103.     Mr. Veal suffered damages, including severe emotional distress and anguish as a proximate result of the Defendant Officers' conspiracy.

## Count VIII – State Law Claim
### Respondeat Superior

104.     Mr. Veal incorporates each preceding paragraph of this Complaint as if fully restated here.

105.     The Village of Dixmoor is liable for Mr. Veal's damages (and any award of attorneys' fees) that were caused by Defendants Morgan, Graves, Falica, and as-yet-unknown Former Employees of the Village of Dixmoor because:

a. The Village of Dixmoor was the employer of Defendants Morgan, Graves, Falica, and as-yet-unknown Former Employees of the Village of Dixmoor; and

b. Defendants Morgan, Graves, Falica, and as-yet-unknown Former Employees of the Village of Dixmoor were agents of the Village of Dixmoor and were acting within the scope of their employment by the Village of Dixmoor when they violated state law.

## Count IX – State Law Claim
### Indemnification

106.     Mr. Veal incorporates each preceding paragraph of this Complaint as if fully restated here.

107.     Illinois law provides that public entities are directed to pay any tort judgment for compensatory damages for which employees are liable within the scope of their employment activities.

108.     The Village of Dixmoor must indemnify Defendants Morgan, Falica, and as-yet-unknown Former Employees of the Village of Dixmoor.

WHEREFORE, Plaintiff ROBERT VEAL respectfully requests that this Court enter judgment in his favor and against Defendants, Illinois State Police Officers TASSO J. KACHIROUBAS, JOHN MEDUGA, WILLIE DAVIS, JAMES KIZART, JESSE GARCIA,

Special Agent of the Illinois State Police RICHARD PACKERT, Former Dixmoor Lt. JOSEPH FALICA, JR., Former Dixmoor Deputy Chief of Police MICHAEL R. MORGAN, VILLAGE OF DIXMOOR, As-yet Unknown Current or Former Employees of the Illinois State Police, and As-yet Unknown Current or Former Employees of the Village of Dixmoor, Illinois, awarding compensatory damages, attorneys' fees, and costs against each Defendant, and punitive damages against each of the individual Defendants, as well as any other relief this Court deems appropriate.

### **Jury Demand**

Robert Veal demands a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all issues so triable.


Respectfully submitted,

/s/ Stuart J. Chanen
One of Plaintiff's Attorneys

Stuart Chanen
Henry Turner
Counsel for Vincent Thames
Valorem Law Group
35 East Wacker Drive, Suite 3000
Chicago, IL  60601
Phone: (312) 676-5480