# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| **ROBERT VEAL**, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 12 C 8342 |
| | ) | |
| v. | ) | Judge Joan H. Lefkow |
| | ) | |
| **TASSO J. KACHIROUBAS**, **ET AL.**, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION & ORDER

Plaintiff Robert Veal brought a nine-count complaint pursuant to 42 U.S.C. § 1983 and

Illinois state law against five individual Illinois State Police ("ISP") officers, an ISP special

agent, former Dixmoor Deputy Chief of Police Michael Morgan, former Dixmoor Police

Lieutenant Joseph Falica (together, "the Dixmoor defendants"), former Chief of Police Nicholas

Graves, yet unknown current and former ISP and Village employees, and the Village of Dixmoor

("the Village"). The complaint alleges individual liability as well as policy and practice and

supervisor liability claims stemming from Veal's arrest and ten-year incarceration for a rape and

murder of which he was later exonerated. The Village, Morgan, and Falica (together, "the

Dixmoor defendants") have moved pursuant to Federal Rule of Civil Procedure 42(b) to

bifurcate the claims against the individual defendants from the claims against the supervisors and

against the Village under *Monell* v. *Department of Social Services of the City of New York*,

436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978). They also seek a stay of discovery and

trial on the *Monell* and supervisor liability claims until resolution of claims against the individual

defendants. Veal opposes bifurcation. The motion will be granted in part and denied in part.

The *Monell* claims will be bifurcated and discovery on them will be stayed, but the supervisor liability claim will not be bifurcated, nor will discovery stayed on it.[1]

## BACKGROUND[2]

This suit stems from the 1991 rape and murder of 14 year-old Cateresa Matthews. While investigating the crime, Village police and ISP officers targeted a group of teenagers, including Veal.[3] Although the young men professed their innocence, the officers omitted their exculpatory statements from police reports and went so far as to fabricate a statement that one of the young men implicated Veal and others in the murder. Once Veal was implicated, ISP officer Tasso Kachiroubas and another ISP officer[4] proceeded to interrogate Veal for hours on October 29, 1992 without any lawyer, parent or guardian present. At the time, Veal was a mentally-challenged and learning-disabled 15-year-old who had an IQ of 56. Veal initially maintained his innocence but Kachiroubas and the other officer coerced Veal into incriminating himself, James Harden, Robert Taylor, Jonathan Barr, and Shainne Sharp in the murder. The officers drafted a confession for Veal to sign, which he did despite not understanding its import. Various

---

[1] The court has jurisdiction over Veal's federal claims pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3). It has jurisdiction over the pendant state law claims pursuant to 28 U.S.C. § 1367. Venue is proper in the Northern District of Illinois under 28 U.S.C. § 1391(b) because at least one defendant resides in this district and all of the events giving rise to Veal's claims occurred in this district.

[2] The following facts are taken from the complaint and presumed true for purposes of deciding the pending motion. (*See* dkt. 1.)

[3] Veal's co-defendants have filed separate suits against the same defendants. These suits are currently pending before judges in this district. *See Harden* v. *Kachiroubas, et al.*, No. 12 C 8316 (N.D. Ill. filed Oct. 17, 2012) (Tharp, J.); *Taylor* v. *Kachiroubas, et al.*, No. 12 C 8321 (N.D. Ill. filed Oct. 17, 2012) (Gottschall, J.); *Barr* v. *Kachiroubas, et al.*, 12 C 8327 (N.D. Ill. filed Oct. 17, 2012) (Wood, J.); and *Sharp* v. *Kachiroubas, et al.*, No. 12 C 8349 (N.D. Ill. filed Oct. 17, 2012) (Gottschall, J.).

[4] Veal alleges on information and belief that this was ISP officer Willie Davis.

defendant Village police and ISP officers also coerced Taylor and Sharp into falsely confessing to the rape and murder.

The Cook County State's Attorney proceeded with the case against the five young men even though the only evidence connecting them to the crime was the confessions made by Veal, Sharp, and Taylor. No physical or forensic evidence linked any of the five co-defendants to the crime. But fearful of what his attorney told him could be an 80-year prison sentence, in 1995 Veal pleaded guilty and agreed to testify against his co-defendants in exchange for a 20-year sentence.

In 2009, Harden filed a motion for post-conviction DNA testing, which motion Taylor and Barr later joined. DNA evidence excluded Veal and his co-defendants as the perpetrators of the crime and later revealed Willie Randolph, a recently paroled sex offender who lived about a mile from where the body was found, as the true culprit. Thus, in 2011, the Cook County State's Attorney's Office requested the Cook County Circuit Court to vacate the convictions of Barr, Harden, and Taylor, who were still incarcerated at that time, and did not oppose Veal and Sharp's petitions to vacate their guilty pleas and convictions. The State's Attorney's Office also moved to dismiss all remaining counts against the five.

All five wrongfully-convicted men (Veal, Harden, Taylor, Barr, and Sharp) have filed separate suits seeking largely the same relief. Veal brings the first four counts of his complaint pursuant to § 1983. Count I alleges deprivation of due process based on the conduct of defendant Village police and ISP officers and includes an allegation under *Monell* that this misconduct was undertaken pursuant to the policy and practice of the Village and with the knowledge or approval of those with policymaking authority for the Village and/or by a

municipal agent with Village policymaking authority. Count II alleges failure to intervene by individual officers, undertaken pursuant to the Village's policy and practice under *Monell*. Count III alleges a conspiracy to deprive Veal of his constitutional rights. Count IV alleges supervisory liability on the part of Morgan, the now-deceased former chief of Dixmoor police Nicholas Graves, and other supervisors, based on their personal involvement in Veal's investigation and prosecution, their failure to train or supervise defendant officers, and their deliberate indifference to officers' investigatory tactics. Counts V-VII allege state-law claims for malicious prosecution, intentional infliction of emotional distress, and civil conspiracy. Count VIII is a *respondeat superior* claim. Count IX against the Village seeks indemnification count, alleging that the Village must indemnify Morgan, Falica, and other unnamed Village employees because they acted within the scope of their employment when committing the alleged misconduct. *See* 745 Ill. Comp. Stat. 10/9-102.

On March 20, 2013, Veal's case was consolidated for discovery scheduling and supervision with the cases filed by Harden, Barr, Sharp, and Taylor. (*See* dkt. 37.) In each of the five cases, the Dixmoor defendants (Falica, Morgan, and the Village) have moved to bifurcate the supervisory liability claim (Count IV) and all § 1983 police and practice claims against the Village from the claims against the officer defendants pursuant to Rule 42(b). (*See* dkt. 56; *see also* Mot. to Bifurcate, *Harden* (No. 12 C 8316), July 19, 2013, ECF 82; Mot. to Bifurcate, *Taylor* (No. 12 C 8321), Aug. 27, 2013, ECF 71; Mot. to Bifurcate, *Barr* (No. 12 C 8327), Aug. 27, 2013, ECF 68; Mot. to Bifurcate, *Sharp* (No. 12 C 8349), Aug. 27, 2013, ECF 59.) On October 10, 2013, Judge Ruben Castillo granted the motion to bifurcate the *Monell* and supervisory liability claims from the claims against the individual officers in *Barr* in open court.

*See* Minute Entry, *Barr* (No. 12 C 8327), Oct. 10, 2013, ECF 75.[5]  On November 15, 2013,

Judge Joan Gottschall granted similar motions to bifurcate in *Taylor* and in *Sharp*.  *See Taylor* v.

*Kachiroubas et al.*, *Sharp* v. *Kachiroubas et al.*, Nos. 12 C 8321, 12 C 8349, 2013 WL 6050492

(N.D. Ill. Nov. 15, 2013) ("*Taylor*").

## LEGAL STANDARD

Federal Rule of Civil Procedure 42(b) allows the court to order a separate trial of one or

more separate issues or claims "[f]or convenience, to avoid prejudice, or to expedite and

economize."  Fed. R. Civ. P. 42(b); *see Krocka* v. *City of Chicago,* 203 F.3d 507, 516 (7th Cir.

2000).  "Only one of [these] criteria need be satisfied for a court to order a separate trial."

*Berry* v. *Deloney,* 28 F.3d 604, 610 (7th Cir. 1994) (internal quotation marks and citation

omitted).  The district court exercises "considerable discretion" when ordering bifurcation of a

trial, which will only be overturned for "clear abuse."  *Krocka,* 203 F.3d at 516 (internal

quotation marks and citation omitted).  Should the court decide that bifurcation is warranted,

Federal Rule of Civil Procedure 26(d) allows the court to stay discovery on a *Monell* claim.  Fed.

R. Civ. P. 26(d)(2); *Jones* v. *City of Chicago,* No. 98 C 5418, 1999 WL 160228, at *3 (N.D. Ill.

Mar. 10, 1999).

## ANALYSIS

The Dixmoor defendants argue that bifurcation is appropriate because (1) Veal cannot

establish his supervisory liability or *Monell* claims without first showing that a Dixmoor officer

violated his constitutional rights; (2) bifurcation promotes judicial economy; and (3) the

defendant officers will be prejudiced if the bifurcation motion is denied.

---

[5]  *Barr* has since been reassigned from Judge Castillo to Judge Andrea Wood.  *See* Executive
Committee Order, *Barr* (No. 12 C 8327), Nov. 18, 2013, ECF 82.

## I.    Village liability in the absence of individual officer liability

In response, Veal argues he could succeed on his *Monell* claims even without demonstrating that individual officers violated his constitutional rights.  To do so he relies on *Thomas* v. *Cook County Sheriff's Department*, 604 F.3d 293 (7th Cir. 2010), in which the Seventh Circuit stated that "a municipality can be held liable under *Monell*, even when its officers are not, unless such a finding would create an *inconsistent* verdict."  *Id.* at 305 (emphasis in original).  *Thomas* interpreted *City of Los Angeles* v. *Heller,* 475 U.S. 796, 799, 106 S. Ct. 1571, 89 L. Ed. 2d 806 (1986), in which the Supreme Court held that municipal liability is foreclosed when an officer defendant is found not guilty of a constitutional violation and the officer has not asserted an affirmative defense, such as qualified immunity, that would allow a jury to find a violation but prevent liability against the officer.  According to *Thomas*, the court must look to the nature of the constitutional violation, the theory of municipal liability, and the defenses set forth to determine whether a municipality's *Monell* liability is dependent upon that of its officers.  604 F.3d at 305.

The nature of the constitutional violations that Veal alleges against the Village belies his argument that he could prevail against the Village in the absence of officer liability.  As set out above, Veal makes three constitutional claims: (1) deprivation of due process; (2) failure to intervene; and (3) conspiracy to deprive Veal of his constitutional rights.  For each of these claims, the Village will only be liable if Veal proves injury arising from the individual officers' conduct.  As Judge Gottschall stated in *Taylor*, "[T]he actions of the individual officers in collecting and fabricating evidence against [the plaintiffs] are the source of the alleged harm to them, and any 'policy' exerted harm through these actions, not independently of them."  *Taylor*,

2013 WL 6050492, at *4. Judge Castillo also ruled in granting the bifurcation motion in *Barr* that the case was distinguishable from *Thomas*. He explained, "[G]iven the nature of the plaintiff's claims and allegations, it's my belief at this point that municipal liability is not going to be established without first showing that one of the named Dixmoor officers violated Mr. Barr's rights." Transcript at 4, *Barr* (No. 12 C 8327), Oct. 10, 2013, ECF 76. In other words, even if the absence of policy may be the source of the violation of civil rights, there is no injury to Veal without officer misconduct.

Veal's theory of liability against the Village is its failure to institute policies that would have guided the officers engaged in the investigation of the murder, and that the Village could be liable if individual defendants succeed on their asserted defense of qualified immunity. Veal expects that the evidence will show that the Village had no policies or procedures regarding proper investigative techniques or practices regarding exculpatory evidence. It is true that a municipality can be held liable for failure to train and supervise its employees in the appropriate handling of exculpatory evidence, as Veal notes. *See*, *e.g.*, *Wardell* v. *City of Chicago*, 75 F. Supp. 2d 851, 856 (N.D. Ill. 1999). But that does not mean that could occur without officer liability in Veal's case, where the defense of qualified immunity seems most unlikely to prevail. As noted by Judge Gottschall in *Taylor*, "Without delving into the merits of the claims, however, it appears unlikely that such a [qualified immunity] defense is compatible with charges that include the fabrication of evidence and the coercion of confessions." *Taylor*, 2013 WL 6050492, at *4. The Dixmoor defendants themselves acknowledge the weakness of this defense. (*See* dkt. 75 at 7 ("But if Veal's allegations are accepted as true, the individual defendants coerced

confessions, manufactured evidence, and suppressed exculpatory evidence. Does Veal believe these allegations fail to make out a constitutional violation?").)

Moreover, the cases upon which Veal relies in making this argument are largely distinguishable because the court in those cases considered qualified immunity a viable defense. *See, e.g., Awalt* v. *Marketti*, No. 11 C 6142, 2012 WL 1161500, at *12 (N.D. Ill. Apr. 9, 2012) (jail employees who acted pursuant to jail health care policies might succeed on qualified immunity defense even though jail healthcare entities could face *Monell* liability for their promulgated policies or customs); *Martinez* v. *Cook Cnty.*, No. 11 C 1794, 2011 WL 4686438, at *2 (N.D. Ill. Oct. 4, 2011) (plaintiff-inmate who was injured by other inmates while defendant officer was supervising a different tier of the jail would not have *Monell* claims bifurcated because it was possible that plaintiff could succeed on claim against county for its policy of allowing officers to monitor different jail tiers simultaneously while officer could succeed on qualified immunity defense for acting pursuant to that policy). Thus, the mere fact that Morgan and Falica assert qualified immunity defenses does not weigh so heavily against bifurcation as to persuade the court to allow all issues in this suit to proceed together.

Veal also points to the fact that his complaint names as-yet unidentified defendants. He argues that if the jury found that those unnamed defendants (as opposed to the individually named Dixmoor defendants) violated Veal's rights, the Village could still be liable to Veal under *Monell*. (*See* dkt. 61 at 6.) In denying the motion to bifurcate in *Awalt*, the court explained, "Furthermore, there are unknown Defendants named in [the plaintiff's] Complaint. The known Defendants might testify that they did not behave with deliberate indifference. . . but that other, unknown Defendants did so behave. If such testimony is adduced, and a jury credits it, the

individually named Defendants might escape liability but [the institutional defendants] could still be held liable for implementing a policy or custom that was the 'moving force' behind the unknown Defendants' unconstitutional acts." *Awalt*, 2012 WL 1161500, at *12. This is a possibility, as such a verdict would not be inconsistent. Nonetheless, as noted by the Dixmoor defendants, the small size of the Dixmoor police department and documents already produced in related litigation render it unlikely that there are other, unknown individuals who infringed on Veal's constitutional rights. (Dkt. 75 at 5-6.) Furthermore, since Veal could have discovered the identity of other offending officers before the two-year statute of limitations ran, it is even more unlikely that this is more than a theoretical argument.

Veal also argues that he could prevail against the Village even if he does not prevail against individual defendants if evidence shows that the Village "failed to adequately train individual officers or failed to act in response to repeated complaints of its officers' violations." (Dkt. 61 at 6.) For this point he relies on *Sornberger* v. *City of Knoxville*, 434 F.3d 1006, 1029-30 (7th Cir. 2006). But in *Sornberger*, the Seventh Circuit explained that municipal liability was a possibility because it, unlike the district court, had "determined that [individual officers] may be found liable for [plaintiff's] unlawful arrest and coerced confession." *Id.* at 1029. Moreover, the Seventh Circuit has pronounced since *Thomas* that "a municipality cannot be liable under *Monell* [for failure to train] where there is no underlying constitutional violation by a municipal employee." *Sallenger* v. *City of Springfield, Ill.*, 630 F. 3d 499, 504 (7th Cir. 2010); *see also Castillo* v. *City of Chicago*, No. 11 C 7359, 2012 WL 1658350, at *5 (N.D. Ill. May 11, 2012) (same). If there is "no constitutional violation, [there is] therefore no municipal liability." *Matthews* v. *City of East St. Louis*, 675 F.3d 703, 709 (7th Cir. 2012). Thus, to the extent that

failure to train underlies Veal's assertion of municipal liability, there can be no *Monell* liability in the absence of individual officer liability.

## II.    Judicial economy

Judicial economy in this instance favors bifurcation.  Typically, "claims of municipal liability require an extensive amount of work on the part of plaintiff's attorneys and experts, and an extraordinary amount of money must be spent in order to prepare and prove them."  *Moore* v. *City of Chicago,* No. 02 C 5130, 2007 WL 3037121, at *9 (N.D. Ill. Oct. 15, 2007).  The "willingness of many judges to grant [motions to bifurcate *Monell* claims] stems in large part from [this] recognition."  *Terry* v. *Cook Cnty. Dep't of Corrs.,* No. 09 C 3093, 2010 WL 2720754, at *2 (N.D. Ill. July 8, 2010).

As the Dixmoor defendants note by pointing to the extensive discovery requests Veal has already served, the question of whether the Village maintains a practice, policy or custom concerning exculpatory evidence and the training and supervision of its officers is a fact-intensive, onerous one.  (*See* dkt. 57 at 7-8.)  The court is unconvinced that the small size of the Dixmoor police department would necessarily translate to limited discovery (*see* dkt. 61 at 8), as already evidenced by these requests.  Additionally, supervision of discovery in all five cases related to the wrongful conviction has been transferred to Magistrate Judge Maria Valdez.  (*See* dkt. 37.)  It would thus be both "expedit[ious] and economi[cal]" to take the same approach as Judge Castillo and Judge Gottschall and grant the motion to bifurcate *Monell* and supervisor liability claims.  Fed. R. Civ. P. 42(b).

Veal disputes the argument that bifurcation would serve the interests of judicial economy, stating that this argument "rests on the faulty assumption that Mr. Veal's *Monell*

10

[c]laims would not be tried at all if this motion is granted." (Dkt. 61 at 9.) But, as discussed above, Veal is highly unlikely to succeed on his *Monell* claims in the absence of a finding of individual liability against Morgan and Falica. If the Dixmoor officials are found liable, the court anticipates that they will be indemnified.[6]

But even in the unlikely event that the Dixmoor officials prevail on a qualified immunity defense, bifurcation does not mean that Veal will be deprived of his chance to pursue his *Monell* theory or otherwise barred from obtaining compensation if he proves he suffered a constitutional injury. *See Taylor*, 2013 WL 6050492, at *5. If necessary, Veal could pursue any remaining *Monell* claims after the claims against individual defendants are resolved. *See Elrod* v. *City of Chicago*, Nos. 06 C 2505, 07 C 203, 2007 WL 3241352, at *8 (N.D. Ill. Nov. 1, 2007).

## III. Prejudice

Veal argues that the individual Dixmoor defendants (Falica and Morgan) would not suffer any prejudice if the suit were not bifurcated because Veal will rely on the same evidence to make out his individual liability and *Monell* claims. (Dkt. 61 at 10-12 (citing *Sivardi*, 959

---

[6]      The Village has not stipulated to entry of judgment against it if the jury finds an individual employee liable. Such a stipulation, for practical purposes, obviates the need for any *Monell* discovery. *See, e.g., Tanner* v. *City of Waukegan*, No. 10 C 1645, 2011 WL 686867, at **6-7 (N.D. Ill. Feb. 16, 2011) (granting motion to bifurcate where city stipulated to entry of judgment if jury found officers violated plaintiff's constitutional rights, and explaining that "stipulations play an important role in courts' consideration of whether to bifurcate"); *Lopez* v. *City of Chicago*, No. 01 C 1823, 2002 WL 335346, at *3 (N.D. Ill. Mar. 1, 2002) (denying bifurcation motion because it was not possible to determine if defendant officers would be prejudiced absent bifurcation and because "the City has not offered to stipulate to a judgment against the City for any compensatory damages awarded against the individual police officers"); *Medina* v. *City of Chicago*, 100 F. Supp. 2d 893, 897-98 (N.D. Ill. 2000) (denying bifurcation where defendant officers did not waive qualified immunity defense "and the City has not offered to stipulate . . . to a judgment against the City for any compensatory damages awarded against the officers"). Lacking a stipulation, the Village conceivably could assert that the officials were not acting within the scope of their employment by the Village. Because the other judges who have considered this issue have not made bifurcation conditional and Veal has not raised the issue, the court does not condition bifurcation on such a stipulation.

F.2d at 669); *Powe* v. *City of Chicago*, 664 F.2d 639, 650-51 (7th Cir. 1981); *Garrett* v. *Dart*, No. 09 C 1398, 2010 WL 2136670, at **3-4 (N.D. Ill. July 8, 2010)).) But while Veal would likely rely on much of the evidence supporting individual officer liability to support *Monell* liability, the inverse is not necessarily true. That is, the scope of evidence he presents to support his *Monell* claim may very well be wider than that to support claims against individual Dixmoor defendants. Presenting evidence to the jury regarding a village-wide policy, practice or custom involving multiple improper police actions poses a danger of undue prejudice to the defendant officers by creating the perception that the police department routinely acts improperly, even if the officers acted properly in this case. *See, e.g., Lopez* v. *City of Chicago,* No. 01 C 1823, 2002 WL 335346, at *2 (N.D. Ill. Mar. 1, 2002) ("Without bifurcation, the jury would likely hear evidence against the City of various acts of alleged police misconduct committed by numerous non-party officers to establish a policy or practice. Such evidence can be prejudicial to the individual defendants.").

## IV. Supervisor liability in the absence of individual officer liability

Although the court concludes that Veal cannot establish liability of the Village without first showing individual officer liability, in this instance, where the only named individual defendants apparently employed by Dixmoor are former officials of its police department, bifurcation of the claims against them would, in effect, stall Veal's case against Dixmoor.

For a supervisor to be liable under § 1983, the supervisor "must be personally responsible for the deprivation of the constitutional right." *Matthews*, 675 F.3d at 708 (internal quotations and citations omitted). To establish this type of personal involvement, the supervisor must "know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear

of what they might see." *Id.* (quoting *Jones* v. *City of Chicago,* 856 F.2d 985, 992-93 (7th Cir.1988)). "[S]upervisors who are merely negligent in failing to detect and prevent subordinates' misconduct are not liable." *Jones,* 856 F.2d at 992. "They must in other words act either knowingly or with deliberate, reckless indifference." *Chavez* v. *Ill. St. Police*, 251 F.3d 612, 651 (7th Cir. 2001).

Veal argues that Morgan and former Dixmoor chief of police Graves are liable under a supervisor liability theory because they were either personally involved in the case against Veal or inadequately supervised or trained Falica and his colleagues. Veal alleges that Morgan was personally involved in the case against Veal or was deliberately indifferent to his subordinates' unconstitutional actions. Compl. ¶ 85. He alleges that Falica questioned co-defendant Sharp multiple times prior to Veal's arrest but failed to note that Sharp did not implicate Veal. Compl. ¶ 32. He alleges that Morgan "encouraged" the individual defendants to coerce and fabricate false inculpatory evidence and to withhold exculpatory evidence. Compl. ¶ 86. These allegations suggest personal involvement beyond the *Monell* claim of failure to implement policy. If Veal proves that the supervisors' knowingly or with deliberate, reckless indifference allowed subordinates to violate Veal's constitutional rights, a jury could find them liable without finding the Village liable for failure to implement policy. Moreover, discovery of the supervisory liability claim is not likely to involve significant extra time or costs, as discovery will involve deposing all witnesses, including the supervisors as to what they said and did.

Since it appears that the Dixmoor officials could be liable even without the Village's

being liable, the court concludes that these claims should not be bifurcated. Thus, the court will bifurcate the *Monell* claims against the Village, described further below, but will not bifurcate the supervisory liability claims against Morgan and Falica.

## ORDER

The Dixmoor defendants' motion to bifurcate the *Monell* claims against the Village from other claims against individual defendants pursuant to Rule 42(b) is granted, as is their motion to stay trial of the *Monell* claims against the Village until resolution of other claims against individual defendants. Their motion to stay discovery on the same is granted insofar as such discovery is related exclusively to *Monell* claims. Conversely, their motion to bifurcate the supervisory liability claim in Count IV is denied and discovery related to this claim may proceed. Additionally discovery that relates to both *Monell* claims and claims against unnamed or individual defendants, including supervisors, may proceed. The parties are to report for a status hearing on February 11, 2014 at 11:00 a.m.

Date:   January 29, 2014

U.S. District Judge Joan H. Lefkow